TULLY D. BOWEN and others, Stockholders of the Union Screw Company, *v.* THE UNION SCREW COMPANY and others.

Where a contract provided, that a corporation should pay certain sums of money to the owners of certain patents, for the use of the same "when determined by vote of the company, at any meeting legally called for that purpose, after the fact has been fully established in the opinion of a majority of the company, representing at least four fifths of the stock, that the machinery will make wood screws satisfactorily, and the legal right to operate the same established," it was *held*, that a formal vote of the company, declaring these facts so established, was not necessary, and the court refused to enjoin the treasurer of said company from paying such sum, in pursuance of a vote passed at a meeting of the company by a majority of the stock only, when satisfied, from the evidence before them, that the facts which the contract required should be established before the money was so paid, had been established to the satisfaction of stockholders owning the required four-fifths of the capital stock, before the vote had been passed, action on which was sought to be enjoined.

BILL IN EQUITY. The hearing was upon the complainant's motion for a preliminary injunction, which was had before the full court upon bill, answer and affidavits. The facts upon which the court based their refusal of the injunction prayed for, are fully stated in their opinion.

*B. F. Thurston and Gardner, for petitioners.*

*Currey and J. Tillinghast, for respondents.*

POTTER, J.  This a motion for preliminary injunction by certain stockholders of the Union Screw Company to restrain the treasurer of said company from paying to the New Bedford Screw Company and to the owners of the Whiting Patents, certain sums of money, in pursuance of a vote passed by a majority only of the stock vote of said Union Screw Company, at a meeting December 9, 1867.

It appears by a contract made June, 1863, signed by the parties when said company was formed, that the New Bedford Screw Company and the owners of certain Whiting patents, were to become members of the new company in conjunction with others ; that 10 per cent. of the proposed value of shares was to be paid by notes and the balance in installments, "when determined by vote of the company at any meeting legally called for that purpose after the fact has been fully established in the opinion of the majority of the company representing at least four-fifths of the stock, that the machinery will make wood screws satisfactorily and the legal right to operate the same established."  No person was obliged to pay any assessment until these facts were ascertained.  The agreement further provided, that when the machinery had been tested and these facts established, the said New Bedford company and owners of Whiting patents were to receive $25,000 each in credit for installments as cash, deducting whatever the Union Screw Company might have to pay in defending said patents against any suits commenced within two years.

The bill sets up, that said facts have never been established as provided in said agreement, and the answer sets up that they have been so established ; that although they had been threatened with suits for infringement of other patents, no suit had ever been commenced ; that when the arbitration was held for determining the amount to be paid by the American Screw Company to the Union Screw Company when the two companies were united, it was claimed upon the part of the Union Screw Company, that the patents were valid and successful, and that the arbitrators allowed the sum of $50,000 and over for them, which amount the Union Screw Company received from

the American Screw Company for a conveyance of said property, including certain machinery which had formerly belonged to the New Bedford Screw Company.

It is contended on the part of the petitioners for the injunction, that the facts to be ascertained before the money was to be paid could only be ascertained by a formal vote of a majority of four-fifths of the whole company, (3,000 shares in all, requiring 2,400 votes,) such vote to be taken at a meeting called *for that purpose.*

On examining the agreement, we are satisfied that the requirement as to a meeting legally called *for that purpose*, refers to the payment of further installments, and not to the mode of ascertaining the facts now disputed.

And it seems to us, also, that the agreement does not specify any particular mode in which these facts should be ascertained; in other words, that a formal vote of the company, however advisable or proper, in order to prevent dispute, was not absolutely required by the terms of the contract.

The new company of course was entitled to a reasonable time for testing the machines, and the ten per cent. seems from the contract itself to have been considered enough to pay all expenses for testing them; and no stockholder was required to pay more until it had been established to the satisfaction of four-fifths that the machines would make screws satisfactorily, and the right to operate them was established.

And in regard to testing the validity of the patents, the subscribers seem themselves to have fixed upon the period of two years as a reasonable time for that purpose.

It seems that as early as May, 1864, the company had new machinery in process of construction, and a new engine and boiler were needed to operate the new machinery, and the directors called a stockholders' meeting, which was held June 7th, when the treasurer presented a written report, the contract was considered, and the company voted to hire $15,000 to carry on the business, complete the new machinery, procure a new engine, boiler, &c.

At the annual meeting July 20th, 1864, the treasurer again

presented a written report, and it was voted that the directors be authorized to make an assessment and to increase the machinery to not exceeding 100 machines.

At a directors' meeting, August 11, the contract was discussed, additional machines ordered, and a stock meeting called, which was held August 16th, when the President stated to the meeting that the object was to raise funds to increase the business, and it was voted to hire $50,000.

At the annual stock meeting, July 19th, 1865, the contract was read, and an assessment of 20 per cent. authorized, which was made July 19th and December 27th.

At the annual meeting July 18th, 1866, a committee was appointed, who reported at an adjourned meeting August 29th, 1866, and the directors were authorized for the purpose of carrying the business forward, to engage a new superintendent, and to assess 20 per cent. The same day the directors met, and after reading the contract made an assessment of 20 per cent.

At all these meetings, the votes, so far as appears, were unanimous. At the meeting of August 29, 1866, more than four-fifths of the stock was represented, and different persons being present at different meetings, the holders of some 2,800 shares of the stock had voted in favor of some one of these proceedings. It appears that no question was ever raised at any of these meetings, but that the patents were valid and the machines successful. It appears further, that even if the assessments were not voted by a majority of four-fifths, that every member has paid them without question, except in one case, and in that case it does not appear that its validity was disputed. No one could be compelled to pay it until the company were satisfied of these facts now disputed, but there is nothing on record to show that any assessment was paid as a voluntary contribution, or under protest, or with any reservation. These assessments were made for the purpose of extending the company's business, which it is not reasonable to suppose would be done unless they were fully satisfied of the facts now disputed.

And it further appears, that when the arbitrators met to determine the amount the American Screw Company were to pay the

Union Screw Company for the patents and property to be trans-ferred to them, the Union Screw Company, by their agents, represented the said patents to be valid and the machines suc-cessful, and the Union Screw Company have received the amount of the award made upon said representations.

Holding, then, that no formal vote was necessary, we consider it as sufficiently made out by what was proved or admitted on the hearing, that the two disputed facts were established to the satisfaction of the required four-fifths long before the vote now sought to be enjoined was passed, and, that, therefore, a ma-jority vote only was necessary, to order the payment of the said sums of money.

The motion for a preliminary injunction is therefore not granted.

*Injunction refused.*